Morphy, J.
This action is brought to recover of the succession of R. L. Smith the amount of a protested bill of exchange, held by the plaintiffs, for $2277 77, dated Natchez, the l'lth of October, 1836, drawn by the deceased on Brander, McKenna & Wright, and by them accepted, payable fifteen months after date, in favor of William Harris, and by him endorsed, subject to a deduction of $600, paid by the acceptors on the 10th of Au *232 gust, 1838. There was a judgment below against the plaintiffs, from which they appealed.
The bill was protested in New Orleans for want of payment, on the 13th of January, 1838, and the certificate of the notary shows that, on the same day, he deposited notices of protest to the drawer and endorser in the post-office, directed to them respectively at Natchez, Mississippi.
The notice thus given to R. L. Smith was clearly bad, as the evidence shows, that at the time of the protest, in 1838, he resided near Choctaw bayou, in the then párish of Concordia; that there were, at that period, two post-offices, one at Rodney, in Mississippi, and one at Harrisonburg, in Louisiana, some ten or twelve miles nearer to the residence of the deceased than Natchez; and no attempt has been made to show that he was in the habit of getting his letters and papers at the latter office. Some declarations of the deceased that he would pay the bill, were relied on as proving a waller of notice on his part: but it has not been -shown that he was aware at the time that he had been discharged by the laches of the holder. 12 La. 465. 13 La. 419. 1 Rob. 572. Story on Bills, § 373. But it is urged, on the part of the appellants, that the drawer of this bill was not entitled to any notice, because he had no funds in the hands of the drawees, Brander, McKenna &. Wright, whose acceptance was purely for his accommodation. This position presents the main ques-tionin the cause.
The testimony of Hamilton Wright and H. F. McKenna, two members of the firm who accepted the bill, and who have since been discharged under the bankrupt law from all their liabilities up to the 10th of March, 1842, has been taken under a commission. They declare that their firm accepted the draft sued on for the accommodation and benefit of the drawer, Smith ; that they received nothing from him to pay the same, and that he had no funds in their hands at the date, nor at the maturity of the draft. They say, that they do not know for what purpose it was drawn, but know that it was made for Smith’s benefit, and that he got the proceeds of it; that he was indebted to their firm, and that his succession is yet indebted to their firm, or their assignees, independent of this draft; that Smith repeatedly acknowledged *233 the debt as his awn, and promised to pay. They think that the last time he promised to pay said draft was in 1841. On the other1 hand, the executors of the estate have shown that, in 1836-, and 1837, there existed between the acceptors and the deceased those transactions and dealings which exist between a planter and his commission merchant; that, on the 14th of April, 1836, and on the 1st of March, 1837, they rendered to him two accounts of sales of cotton, the first amounting to $930 83, and the other to $1139 20, and that about that time they shipped to him sundry articles for his plantation. Were these commercial dealings between the drawer and the drawees in proof before us on a question of want of notice, or the mere acceptance of this bill, we would probably hold, under the principles of the commercial law, and our own decisions, that the former was entitled to notice of the dishonor of the bill, although in point of fact he had no. funds in the hands of the latter, because he might, in good faith, have expected that his factors would have accepted it. Bloodgood v. Hawthorn, 9 La. 134. Williams v. Broadhead, 19 La. 370. But in the present case, the evidence shows the nature of the transaction when it took place.. The acceptance was made for the sole accommodation of the drawer, who, at that time, impliedly unplertook to provide funds for the due payment of the bill at its maturity. He received the proceeds of it when discounted, and always acknowledged the debt as his own. It has not been shown that the commercial dealings spoken of between him and the drawees were kept up to the time of the maturity of the bill, so as to justify, or render probable, the expectation that they might possibly have funds belonging to him to any amount. He has not shown that he made any provision to meet this draft. If, previously to its maturity, he had any funds in the hands of the acceptors, he had withdrawn them, and left the draft unprovided for, having made with such acceptors no arrangement or agreement which gave him the right to expect that it would be paid by them, how can he be supposed to have suffered any loss by the want of notice ? The dealings which are shown to have existed between him and the acceptors, in 1836 and 1837, cannot alter the character of the original transaction, which was one to raise money for the drawer on the credit of the acceptors. *234 Had he taken up the bill, he would have paid a debt for which he was primarily bound as regards the acceptors, and would have had no remedy either against them or anybody else ; whereas, had they paid the draft, the drawer would have been liable to refund the money to them without any protest or notice. He cannot, therefore, be said to have been entitled to notice, unless it is shown that he has sustained some special loss or injury from the want of it. It is well settled that the drawer is not entitled to notice of non-payment by the acceptor, if the bill has been accepted merely for his accommodation. Bailey on Bills, 302. Story on Bills, § 310, 311, and 312.
The plea of prescription was set up in this court. The record shows, that more than five years have elapsed between the maturity of the bill, and the inception of the present suit. We are not satisfied that the loose declaration of Smith that he would pay the bill, made out of the presence of the plaintiffs, and at a time which is not positively shown, should be viewed as a sufficient acknowledgment of the debt to interrupt prescription. The witness speaks with no certainty as to the date of such promises. They may have been made before the maturity of the draft, and, if so, did not interrupt prescription. 10 La. 569. The plaintiffs have asked, that this cause be remanded for trial upon the plea of prescription now set up for the first time. This they have a right to under article 902 of the Code of Practice. In complying with this request, we have thought it best to remand the case to be tried, de novo, upon its merits generally. This will afford both parties an opportunity of giving additional evidence, and will be conducive to the ends of justice.
It is, therefore, ordered, that the judgment of the Court of Probates .be reversed, and that this case be remanded, to be proceeded in according to law; the appellees paying the costs of this appeal.